UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CNC SOFTWARE, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOBAL ENGINEERING LIMITED LIABILITY COMPANY, et al.,<br><br>    Defendants. | Case No. 22-cv-02488-EMC<br><br>**ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Docket Nos. 29, 33 |

## I.    INTRODUCTION

Plaintiff CNC Software, LLC ("CNC") brought this case against Defendants Global Engineering LLC ("Global") and Edwin Escobar, President of Global, for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq., for violation of the Digital Millennium Copyright Act's anticircumvention prohibitions, 17 U.S.C. §§ 1201 and 1203, and for breach of contract. *See* Docket No. 1 (Complaint). CNC alleges that Defendants illegally pirated CNC's Mastercam® software. *Id.* Defendants have neither opposed the action nor appeared. Now pending before this Court is CNC's motion for default judgment. In the motion, CNC seeks actual damages, a permanent injunction, attorney's fees, costs, and post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See* Docket No. 29 ("Mot.") at 13–20.

For the following reasons, this Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation **GRANTING** Plaintiff's motion for default judgment.

## II.    FACTS AND PROCEDURAL HISTORY

CNC is a Connecticut company in the CAD/CAM ("Computer Aided Design/Computer Aided Manufacturing") business. *See* Compl. ¶ 25. CNC created Mastercam®, a suite of CAM

software applications. *See id.* ¶ 26.  Mastercam® is CNC's "flagship product," and it is used in a variety of industries including aerospace, medicine, and transportation. *See id.*  Mastercam® is protected by at least thirteen United States copyrights owned by CNC. *See id.* ¶¶ 12–24.

CNC licenses use of Mastercam® to its customers. *See id.* ¶ 34.  The number of simultaneous users of Mastercam® is limited by the number of licenses purchased. *See id.*  CNC prevents unauthorized use of Mastercam® through a "Security Mechanism." *See id.*  CNC's license agreement provides that licensees cannot use the Mastercam® software without the "Security Mechanism" and that Mastercam® can detect the installation or use of illegal copies of the Mastercam® software and collect and transmit data about those illegal copies. *See id.*

To illegally use Mastercam®, hackers reverse engineer the "Security Mechanism" and then provide processes and utilities to bypass the license enforcement agreement. *See id.* ¶ 34.  These processes and utilities mimic the license verification technology such that the pirated software can function as if it were properly licensed Mastercam® software. *See id.*  These pirated software programs that mimic properly licensed programs are referred to as "cracked" licenses. *See id.*  The illegally obtained software and the cracked copies can be downloaded by other end-users for free or for deeply discounted prices. *See id.* ¶¶ 32, 35.

Piracy Detection and Reporting Security Software (PDRSS) allows software providers to identify software piracy and provides the identity and location of organizations using the pirated software. *See id.* ¶ 37.  CNC embeds PDRSS within their software. *See id.* ¶ 40.  Using the PDRSS within Mastercam®, CNC identified Defendants as using pirated versions of Mastercam®. *See id.* ¶ 48.  CNC identified at least 4,000 instances of Defendants using pirated versions of Mastercam® on at least eleven computers owned by Defendants or its employees between February 16, 2018, and April 22, 2022  *See id.* ¶ 52.

CNC attempted to contact Defendants to resolve the illegal use of Mastercam® on multiple occasions. *See id.* ¶¶ 55–62.  Defendants ignored most of this outreach; when they finally responded on February 16, 2022, no agreement was reached. *See id.*  During these outreach attempts and associated discussions, Defendants continued to use pirated versions of Mastercam® without authorization. *See id.* ¶ 61.

On April 22, 2022, CNC filed this suit against Defendants for direct copyright infringement and contributory and vicarious copyright infringement. *See* Compl. On June 14 and September 8, 2022, CNC served Defendants a copy of documents for service. *See* Docket No. 19 (Certificate of Service); Docket No. 29-2 (Declaration of Milord A. Keshishian ("Keshishian Decl.")) ¶¶ 2–3. Defendants did not respond. CNC then filed a request for an entry of default, which was entered by the Clerk of the Court for Mr. Escobar and Global on October 3, 2022, and November 29, 2022, respectively. *See* Docket Nos. 21, 27.

On January 5, 2023, CNC filed this motion seeking actual damages, a permanent injunction, fees and costs, and post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See* Mot. at 13–20. On January 23, 2023, Magistrate Judge Thomas Hixson asked CNC for supplemental briefing regarding its request for attorney's fees. *See* Docket No. 30. CNC filed the supplemental briefing on February 10, 2023. *See* Docket No. 32.

On January 26, 2023, CNC filed its "proposed findings of fact and conclusions of law" with Judge Hixson. *See* Docket No. 31. On March 23, 2023, Judge Hixson issued his report and recommendations on Plaintiff's motion, which fully adopted Plaintiff's proposal. *See* Docket No. 33. That same day, the case was reassigned to this Court.

### III.   LEGAL STANDARD

**A.   Standard of Review of a Magistrate Judge's Recommendation**

District courts review proposed findings and recommendations of magistrate judges de novo. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

**B.   Entry of a Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a district court, following default by a defendant and request by a party, to enter a default judgment. Fed. R. Civ. Proc. 55(b)(2). "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

"With the exception of facts relating to damages, courts must take as true all other factual allegations pled in the complaint." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*,

3

416 F. Supp. 3d 948, 962 (N.D. Cal. 2019*)*.  "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal quotation marks omitted).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. Proc. 54(c).

In *Eitel v. McCool*, the Ninth Circuit enumerated seven factors to consider when considering a motion for a default judgment:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471–72 (9th Cir. 1986).  There, the Ninth Circuit also noted that "default judgments are ordinarily disfavored . . . [and that] [c]ases should be decided upon their merits whenever reasonably possible."  *Id.* at 1472.

## IV.     ANALYSIS

A.  Threshold Jurisdictional Issues

Before ruling on the merits of a motion for default judgment, the Court must confirm that it has jurisdiction over the subject matter of the litigation and the parties involved.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

1.  Subject Matter Jurisdiction

Section 1338 of Title 28 of the U.S. Code provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."  28 U.S.C. § 1338.  This Court thus has subject matter jurisdiction.

2.  Personal Jurisdiction

a.  Basis for Personal Jurisdiction

Global is a domestic limited liability company with its headquarters in California.  *See* Compl. ¶ 2.  Global is therefore subject to the general personal jurisdiction of this Court.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

4

1  The Court has personal jurisdiction over Mr. Escobar, the President of Global, because he
2  is domiciled in California, the forum state.  *See* Compl. ¶ 5; *Seiko Epson Corp. v. Straightouttaink,*
3  *L.P.*, 2021 WL 7448739, at *3 (N.D. Cal. Dec. 8, 2021), *report and recommendation adopted sub*
4  *nom. Seiko Epson Corp. v. Straightouttaink, L.P.*, 2022 WL 740919 (N.D. Cal. Jan. 28, 2022).
5  Venue is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions
6  giving rise to the claim occurred in this district.

        b.        Service of Process

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Notice of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

On September 8, 2022, Global confirmed receipt of the documents and returned a signed Waiver of Service of Summons to Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 4(d)(1).  Keshishian Decl. ¶ 1; Docket No. 18.  CNC personally served Mr. Escobar on June 14, 2022, pursuant to Federal Rule of Civil Procedure 4(e)(2)(A).  *See* Keshishian Decl. ¶ 2.

Neither Defendant responded to the complaint and the Court subsequently entered default judgment against both Defendants.  *See* Docket Nos. 21, 27.  All procedural requirements for entry of default judgment have been satisfied.

B.    *Eitel* Factors

Application of the seven *Eitel* factors counsels in favor of a default judgment.

    1.    The Possibility of Prejudice

In evaluating the first factor, the possibility of prejudice, "[c]ourts have found such prejudice when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief."  *Vietnam Reform Party*, 416 F. Supp. 3d at 962.  Plaintiffs filed this action almost one year ago and have yet to receive a response from Defendants.  Defendants' failure to respond has thus precluded Plaintiffs from preventing continued copyright infringement

5

1   and securing compensation for past infringement.  *See id.* ("Because Defendants . . . have not
2   appeared in this long-running action, Plaintiff would be prejudiced absent a default judgment
3   because it would have no other recourse to prevent infringement by Defendants.").  The first factor
4   weighs in favor of Plaintiffs.

5       2.    <u>Merits and Sufficiency of the Claims</u>

6   "The second and third *Eitel* factors consider the merits and sufficiency of a plaintiff's
7   claims." *Vietnam Reform Party*, 416 F. Supp. 3d at 962.  "These two factors are often analyzed
8   together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may
9   recover." *Id.* (internal quotation marks omitted).  "Of all the *Eitel* factors, courts often consider
10  the second and third factors to be the most important." *Id.* (internal quotation marks omitted).

11      a.    <u>Digital Copyright Infringement</u>

12  The Copyright Act provides monopoly protection to "original works of authorship."  *See*
13  17 U.S.C. §§ 101–103.  "To establish [copyright] infringement, two elements must be proven: (1)
14  ownership of a valid copyright, and (2) copying of constituent elements of the work that are
15  original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Both are
16  easily met here.

17  First, CNC points to thirteen unique copyrights that it owns related to Mastercam®.  *See*
18  Compl. ¶¶ 12–24.  This satisfies the first element.

19  "To prove the 'copying' element, a plaintiff must catch the defendant in the act or can
20  demonstrate (1) circumstantial evidence of the defendant's access to the copyrighted work; and (2)
21  substantial similarity between the copyrighted work and the defendant's work."  *CNC Software,*
22  *Inc. v. T D Mfg., Inc.*, No. SACV819CV1444JLSJDE, 2020 WL 2042330 at *3 (C.D. Cal. Mar.
23  24, 2020).  As in *T D Mfg.*, here, "copying is established because the pirated software is a cracked
24  version of the licensed software." *Id.*; *see* Compl. ¶ 48.  Every time Defendants loaded the
25  cracked software onto their computers, they infringed on Plaintiff's copyright, and CNC was able
26  to "catch [D]efendants in the act" using the PDRSS embedded within Mastercam®.  *See* Compl. ¶
27  40; *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (affirming "the
28  district court's grant of summary judgment in favor of MAI on its claim that Peak violated its

6

1  copyright through the unlicensed use of MAI software at Peak headquarters"); *T D Mfg., Inc.*,

2  2020 WL 2042330 at *3 ("Defendants' loading of the pirated software onto their several

3  computers and unlicensed use of the software constitutes copyright infringement.").

4        Mr. Escobar, as President of Global, is also directly liable for Global's infringement. In its

5  complaint, CNC alleges that the pirated Mastercam® software was used almost 4,000 times across

6  at least eleven computers owned or controlled by Defendants. *See* Compl. ¶¶ 52–54. "[A]

7  corporate officer who participates in the commission of a tort may be held individually liable,

8  regardless of whether the officer acted on behalf of the corporation in the course of official duties

9  and regardless of whether the corporate veil is pierced."[1] *In re JUUL Labs, Inc., Mktg., Sales*

10  *Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 670 (N.D. Cal. 2020); *see also Michaelis v.*

11  *Benavides*, 61 Cal. App. 4th 681, 686, 71 Cal. Rptr. 2d 776, 778–79 (1998) (finding respondent

12  "personally liable for the negligent act by his direct participation and decisionmaking" which

13  "prevent respondent from using the corporate veil to shield himself from personal liability");

14  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding

15  that an officer cannot "hide behind the corporation where he is an actual participant in the tort").

16  This principle applies because corporate officers "individually owe a duty of care, independent of

17  the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable

18  risk of personal injury to third parties." *Universal Church, Inc. v. Standard Constr. Co. of San*

19  *Francisco, Inc.*, No. 14-CV-04568-RS, 2015 WL 7753211, at *3 (N.D. Cal. Dec. 2, 2015).

20        CNC has also sufficiently shown that Defendants' actions were willful. "[A] finding of

21  'willfulness' in [the copyright] context can be based on either 'intentional' behavior, or merely

22  'reckless' behavior." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). In the Complaint,

---

[1] The Court notes that CNC does not argue an alter ego theory. Under the "alter ego" equitable doctrine, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation," such as "when the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1341 (2009). But there is no need to pierce the corporate veil "where officers direct, order, or participate in the company's tortious conduct" to establish personal liability here. *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 WL 5372341, at *10 n.3 (N.D. Cal. Sept. 25, 2013).

7

1  Plaintiffs identified six occasions on which they reached out to Defendants to discuss the illegal
2  use of Mastercam®.  *See* Compl. ¶¶ 55–65.  Mr. Escobar responded to one of those messages and
3  said that he wanted to discuss the unlicensed use of Mastercam®, but little came of those
4  discussions and the illegal use continued.  *See id.* ¶¶ 60–61.  Prior to Mr. Escobar's response,
5  Defendants actions were at least reckless.  Defendants ignored CNC's attempts to contact them
6  and, at best, failed to follow up on allegations that they were illegally using Mastercam®.  And
7  after Mr. Escobar's response, Defendants *knew* that their continued use of Mastercam® was illegal
8  because CNC explained as much to Mr. Escobar.  Defendants nevertheless continued to use
9  Mastercam®.  Further, CNC has explained that downloading and using unlicensed versions of
10 Mastercam® cannot be done unwittingly.  *See id.* ¶ 51.  Rather, accessing an unlicensed version of
11 Mastercam® "is a multi-step process that requires willful and deliberate action to circumvent the
12 PDRSS and other components of the Security Mechanism that are put in place to deter and detect
13 unlicensed use of software."  *Id.*  CNC has thus carried its burden of showing that Defendant'
14 illegal use of Mastercam® was willful.  CNC has satisfied the elements of digital copyright
15 infringement for purposes of the second and third *Eitel* factors.

16          b.        Mr. Escobar's Contributory/Vicarious Copyright Infringement

17 Mr. Escobar is liable for contributory copyright infringement if he had "knowledge of the
18 infringing activity and induce[d], cause[d], or materially contribute[d] to the [activity]."  *Perfect*
19 *10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 727 (9th Cir. 2007); *overruled on other grounds by*
20 *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010).  "In addition, a party is vicariously
21 liable for the infringement of another if it has a right and ability to control the infringing activity
22 and derives a direct financial benefit from that activity."  *T D Mfg., Inc.*, 2020 WL 2042330 at *4
23 (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005)); *see*
24 *also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) ("A
25 corporate 'officer or director is, in general, personally liable for all torts which he authorizes or
26 directs or in which he participates, notwithstanding that he acted as an agent of the corporation and
27 not on his own behalf.'").  Here, Mr. Escobar was made aware of the infringing activity when he
28 was informed of it by CNC on February 11, 2022.  *See* Compl. ¶ 60.  CNC further alleges that Mr.

1   Escobar "directed [Mastercam®'s] unauthorized use," despite his knowledge that the use was
2   illicit. *See id.* ¶ 65; *T D Mfg., Inc.*, No. SACV819CV1444JLSJDE, 2020 WL 2042330 at *4
3   (finding sole shareholder of a company vicariously liable for infringement of CNC's Mastercam®
4   copyrights because he "was informed on numerous occasions of the pirated Mastercam® software
5   installed and used on TDM's computers, but did not take any measures to prevent the
6   infringement"). Because this Court "must take as true all [non-damages-related] factual
7   allegations pled in the complaint," the Court can conclude that Mr. Escobar knew of and directed
8   Global's illicit use of Mastercam®. *Vietnam Reform Party*, 416 F. Supp. 3d at 962. CNC has thus
9   satisfied the elements of the vicarious infringement claim against Mr. Escobar for purposes of the
10  second and third *Eitel* factors.

   3. <u>Money at Stake</u>

  "For this factor, 'the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.'" *Id.* (quoting *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)). "Default judgment is appropriate when the sum at stake is tailored to the defendant's specific misconduct." *Id.* "The Court may consider a plaintiff's declarations, calculations and other documentations of damages." *Id.* Precisely as in *T D Mfg.*, "Defendants engaged in the illegal copying . . . and use of pirated software for numerous years and ignored numerous cease and desist demands." *Id.* Moreover, like in *T D Mfg.*, CNC has conservatively requested only one year's worth of damages. *See* Kennedy Decl. ¶ 9[2]; *id.* ("Defendants caused lost annual royalties for CNC, yet CNC is only seeking damages for only one year of royalties and support for four computers."). Here, "the damages sought are within a conservative and permissible range, [so] such an award is not disproportionately large for the

---

[2] Paragraph 7 of the Kennedy Declaration says that CNC is seeking damages related only to six computers, although it is confident that pirated versions of Mastercam® were copied onto at least ten computers controlled by Defendants. *See* Kennedy Decl. ¶ 9. That conservative approach was cited by Judge Hixson in his recommendation. *See* Docket No. 33 at 10. And yet, paragraph 9 of that Declaration appears to calculate actual damages based on all ten of the identified computers. *See* Kennedy Decl. ¶ 9 ("Based on Defendants' infringement of the Mastercam® software suite via 10 separate computers, CNC has been damaged in the amount of $870,000.00. Despite CNC's right to claim damages for three years (i.e. $2,610,000.00), it is seeking damages for only one year of lost licensing revenue.").

1    purposes of this factor."  *Id.*

2                4.    Possibility of Dispute over Material Facts

3          "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning

4    material facts is remote."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D.

5    Cal. 2012) (citation omitted); *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.

6    Supp. 2d 916, 922 (C.D. Cal. 2010) ("Since [plaintiff] has supported its claims with ample

7    evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the

8    complaint, no factual disputes exist that preclude the entry of default judgment.").  Here, CNC has

9    sufficiently pled its claims and Defendants have chosen not to contest the action.  Thus, the

10   possibility of a dispute over material facts is slim.  This factor weighs in favor of a default

11   judgment.

12               5.    Whether Default was Due to Excusable Neglect

13         "The sixth *Eitel* factor considers the possibility that the default resulted from excusable

14   neglect."  *PepsiCo*, 238 F. Supp. 2d at 1177.  "This factor favors a default judgment when the

15   defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the

16   lawsuit."  *T D Mfg., Inc.*, 2020 WL 2042330 at *5.  Here, Defendants were repeatedly contacted

17   about the infringement, served with the required documents, and nevertheless have not appeared.

18   There is nothing to suggest that their failure to appear was due to excusable neglect.  This factor

19   thus weighs in favor of default judgment.

20               6.    Policy Favoring Deciding a Case on the Merits

21         While courts prefer to dispose of litigation on the merits, "Defendants' refusal to

22   participate in this litigation made a decision on the merits impossible."  *T D Mfg., Inc.*, 2020 WL

23   2042330 at *5; *see Vietnam Reform Party*, 416 F. Supp. 3d at 970 ("[D]eciding the case on the

24   merits is impossible where a party refuses to participate."); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177

25   ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever

26   a defendant fails to defend an action.").  Defendants' failure to respond tilts this factor in favor of

27   a default judgment.

28         All seven *Eitel* factors weigh in favor of a default judgment.  This Court concludes that a

1  default judgment is appropriate.

## C. Relief Sought

Unlike allegations regarding liability, allegations regarding damages listed in the complaint are not taken as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also* Fed. R. Civ. Proc. 55(b)(2)(B) ("The court may conduct hearings or make referrals . . . it needs to . . . determine the amount of damages.").

### 1. Actual Damages

Section 504(a) of Title 17 of the U.S. Code permits a copyright infringement plaintiff to recover "the copyright owner's actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a). "The moving party has the burden to prove up damages." *United States v. Sundberg*, No. C-09-4085 EMC, 2011 WL 3667458 at *6 (N.D. Cal. Aug. 22, 2011). "Where the amount of damages is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits, the Court may enter default judgment without a hearing on damages." *Id.* (internal quotation marks omitted). "[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Jarvis v. K2 Inc.*, 486 F.3d 526, 533–34 (9th Cir. 2007).

"Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). "[I]t is not improper . . . to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on undue speculation." *Id.* at 709 (internal quotation marks omitted).

While Defendants' failure to appear has prevented CNC from pursuing discovery to identify the precise value of the damages, CNC has nonetheless come forward with evidence of the value of the Mastercam® license and the annual maintenance on each computer that uses

Mastercam®.  CNC has identified ten computers with different usernames that used pirated Mastercam® software.  *See* Docket No. 29-3 (Declaration of Jacqueline Kennedy ("Kennedy Decl.")) ¶ 7.  Jacqueline Kennedy, CNC's Software Protection and Anti–Piracy Manager, further declared to the Court that the pirated versions of Mastercam® used by Defendants were licensed at $73,950 per seat per year with a mandatory per seat maintenance fee of $13,050, adding to a total per seat per year cost of $87,000.  *See id.* ¶ 8.  Therefore, CNC has made a sufficient showing that it is entitled to $870,000 in actual damages ($87,000 per seat x 10 seats).  *See T D Mfg.*, 2020 WL 2042330 at *5 ("CNC is entitled to its actual damages of a full suite Mastercam®® license comprising $75,500.00 per computer and annual maintenance of $8,604 per computer . . . Thus, based on the four hostnames (i.e. computers) identified in the PDRSS data, CNC is entitled to actual damages of $336,416.00.") (internal citation omitted).  The Court thus awards CNC actual damages of $870,000.

### 2. Permanent Injunction

"A permanent injunction is an appropriate remedy in default judgment cases involving claims of copyright infringement."  *T D Mfg.*, 2020 WL 2042330 at *6.  Section 502(a) of Title 17 of the U.S.C. specifically provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "A permanent injunction is appropriate where a plaintiff shows: (1) irreparable harm; (2) that monetary damages are inadequate; (3) that the balance of hardships favors plaintiff; and (4) that an injunction would benefit the public interest."  *T D Mfg.*, 2020 WL 2042330 at *6 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006)).

#### a. Irreparable Harm and Adequacy of Monetary Damages

"Jeopardy to [a corporation's] competitive position caused by copyright infringement satisfies the irreparable harm requirement."  *Id.*  "The threat of the loss of prospective customers, goodwill, or reputation also supports a finding of irreparable harm."  *Id.*  "These intangible injuries are irreparable because quantifying their harm is impractical, and such injuries cannot be fully remedied with a financial award."  *Id.*

12

CNC alleges in its complaint that software that has been hacked or modified to use a cracked license "may also contain malware that can damage computer systems, and/or infiltrate the computer network and the data on that network." Compl. ¶ 34. Permitting end-users to utilize this lower-quality, malware-ridden version of Mastercam® would constitute a future injury to CNC's business and reputation. "Thus, a permanent injunction is the only remedy available to CNC to limit the potential of future injury." *T D Mfg.*, 2020 WL 2042330 at *6 (citing *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) (money damages are insufficient where they would not prevent defendant from continuing to infringe on copyrights), *aff'd in part and remanded in part on other grounds*, 658 F.3d 1150 (9th Cir. 2011)).

### b. Balance of Hardships

The balance of hardships weighs in favor of granting a permanent injunction. "While CNC will be severely harmed by the continued infringement of its software, the harm to Defendants if injunctive relief is granted is remote." *T D Mfg.*, 2020 WL 2042330 at *6. "While Defendants will be able to continue in business, it will simply have to do without using pirated software." *Id.* "Therefore, any potential harm to Defendants is slight in comparison to the potential injury suffered by CNC if an injunction does not issue." *Id.*

### c. Public Interest

"It is virtually axiomatic that the public interest can only be served by upholding copyright protections, and correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *T D Mfg.*, 2020 WL 2042330 at *6 (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)). "Here, Defendants' competitors' interests would be protected because their project bids would not be undercut by Defendants' bids, where Defendants avoid software costs through use of pirated software." *Id.* "Injunctions are regularly issued pursuant to the mandate of Section 502, because the public interest is the interest in upholding copyright protections." *Id.* (quoting *Arista Records, Inc. v. Beker Ent., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)). The public interest prong also weighs in favor of granting a permanent injunction.

### 3. Destruction of Infringing Software

Section 503(a) of Title 17 of the U.S. Code provides that "the district court may order the impounding, on such terms as it may deem reasonable . . . of all copies . . . claimed to have been made or used in violation of the exclusive right of the copyright owner." 17 U.S.C. § 503(a). "Based on Defendants' past conduct and continued wrongful use of the infringing software after notice, it is possible that Defendants are still using and operating the Mastercam® software on devices disconnected from the Internet." *T D Mfg.*, 2020 WL 2042330 at *6; Kennedy Decl. ¶ 10. Accordingly, the Court orders that Defendants must, within 30 days of the entry of judgment in this matter, both (1) delete all infringing software from their computers and (2) file with the Clerk of this Court and serve CNC a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction. *See T D Mfg.*, 2020 WL 2042330 at *6 (ordering the same procedure in granting default judgment against defendants who failed to appear).

### 4. Attorney's Fees

In addition to permitting the recovery of costs, 17 U.S.C. § 505 allows a district court to "allow the recovery of reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "Attorneys' fees are proper when a court grants a default judgment." *Discovery Commc'ns., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291 (C.D. Cal. 2001).[3]

When determining reasonable attorney's fees in a copyright infringement action, "[t]he [C]ourt determines reasonable attorneys' fees according to the lodestar analysis, which multiplies

---

[3] Typically, when evaluating a request for attorney's fees in a copyright infringement case, courts in the Ninth Circuit consider "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997). However, in a default judgment case, the factors are easily met. CNC has obtained full success, their complaint was not shown to be frivolous, they were motivated to recover legally cognizable damages, there was no objecting party to make any arguments, and attorney's fees are warranted to deter both Defendants' substantive copyright infringement and their unresponsiveness to CNC's filings. Consequently, most courts awarding attorney's fees under 17 U.S.C. § 505 in a default judgment case don't address the factors from *Genesis*. *See, e.g.*, *T D Mfg.*, 2020 WL 2042330 at *7; *Crisman v. Van Der Hoog*, No. 20-CV-02723-JD, 2021 WL 8445148 at *3 (N.D. Cal. Nov. 2, 2021).

1    the number of hours reasonably expended on the matter by a reasonable hourly rate." *Erickson*

2    *Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2022 WL 408436 at *3 (N.D. Cal. Feb. 10, 2022)

3    (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

4        "The party seeking fees bears the initial burden of establishing the hours expended

5    litigating the case and must provide detailed time records documenting the tasks completed and

6    the amount of time spent." *Erickson,* 2022 WL 408436 at *3.  "The requesting party also has the

7    burden to demonstrate that the rates requested are in line with the prevailing market rate of the

8    relevant community." *Id.* (internal quotation marks omitted).  "Typically, 'affidavits of the

9    plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate

10   determinations in other cases . . . are satisfactory evidence of the prevailing market rate.'" *Id.*

11   (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

12       a.    Reasonableness of Hourly Billing Rate

13       CNC seeks $575/hour for the work of two senior attorneys with 24 and 19 years of

14   experience, respectively; $435/hour for a senior associate attorney with four years of experience;

15   $300/hour for one associate attorney with two years of experience; and $195/hour for legal

16   assistants, paralegals, and law clerks.  *See* Docket No. 32 at 1–2.  These rates "are in line with the

17   prevailing market rate" in the Northern District of California.  *See, e.g.*, *Facebook, Inc. v. Holper*,

18   No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27, 2022), *report and*

19   *recommendation adopted as modified*, No. C 20-06023 WHA, 2022 WL 17169836 at *15 (N.D.

20   Cal. Nov. 22, 2022) (determining that "$530 per hour for second-year associates . . .  up to $725

21   per hour for a senior associate with significant practice experience . . . up to $780 per hour for a

22   counsel with nearly twenty years of experience . . . and up to $1,165 per hour of an office

23   managing partner with thirty years of experience . . . are within the reasonable range of the local

24   market); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (approving

25   attorney's fees of $700/hour for an attorney with more than 20 years of experience and that "has

26   spoken at several law schools and bar meetings, and has served as lead counsel on a number of

27   trademark cases"); *Joe Myeress v. USA World Bus. Serv., Inc.*, No. 16-CV-05236-YGR (SK),

28   2017 WL 990587 at *6 (N.D. Cal. Mar. 3, 2017), *report and recommendation adopted sub nom.*

*Myeress v. USA World Bus. Serv., Inc.*, No. 16-CV-05236-YGR, 2017 WL 976916 (N.D. Cal. Mar. 14, 2017) (finding "$415 an hour for lead associate counsel with 8 years of experience, $395 an hour an associate with 4 years of experience and paralegal assistance at $295 per hour" reasonable); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (noting that "reasonable hourly rates . . . for paralegals and litigation support staff [range] from $150 to $240" in the Bay Area). The Court finds CNC's hourly billing rates to be reasonable.

b. <u>Reasonableness of Hours Billed</u>

"[D]istrict courts have a duty to ensure that claims for attorneys' fees are reasonable, and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (internal quotation marks and citations omitted). "Rather, a district court must ensure that the winning attorneys have exercised billing judgment." *Id.* (internal quotation marks omitted). "In a case in which a defendant fails to appear or otherwise defend itself, however, the burden of scrutinizing an attorney's fee request—like other burdens— necessarily shifts to the court." *Id.*

Here, CNC has submitted a detailed schedule of the amount spent on each billed task. *See* Docket No. 32-1 (Supplemental Declaration of Milord A. Keshishian ("Keshishian Supp. Decl.")) Exhs. 5–6. CNC explains that its attorneys expended 34.5 hours of work (across all three cost buckets) and its legal assistants/paralegals/law clerks expended 16.6 hours of work in support of their request of $19,743.50 in attorney's fees. *See* Docket No. 32 at 6–7; Appendix Table 1. The Court agrees with Magistrate Judge Hixson that CNC's schedule does not suggest duplicative billing or an unreasonably high number of hours, but that CNC has included a small number of clerical or secretarial tasks in their schedule. *See* Docket No. 33 (Recommendation) at 19. The Supreme Court in *Missouri v. Jenkins* held that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." 491 U.S. 274, 288 n.10 (1989). "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).

In this case, the clerical tasks—namely updating the docket and calendaring relevant

1  events—were interspersed with non–clerical tasks. *See* Keshishian Supp. Decl., Exhs. 5–6; *League
2  of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1171
3  (D. Or. 2018), *appeal dismissed sub nom. League of Wilderness Defs./Blue Mountains
4  Biodiversity Project v. United States Forest Serv.*, 2019 WL 4453723 (9th Cir. Mar. 8, 2019)
5  (including court filings as among clerical tasks); *Hernandez v. Spring Charter Inc.*, 2020 WL
6  1171121 at *7 (N.D. Cal. Mar. 11, 2020) (including calendaring as among clerical tasks).

| TABLE 1: ATTORNEY'S FEE SCHEDULE WITH CLERICAL TASKS UNDERLINED ||||||
|---|---|---|---|---|---|
| Date | Employee | Hours | Rate | Dollars | Task |
| 4/22/22 | SVT | 0.70 | $435 | $304.50 | A103 Draft/revise L210 Pleadings: Finalize and file 0.70 $435.00 Complaint, Civil Cover Sheet, Report re Copyright, and Proposed Summons; **Update docket and calendar relevant events.** |
| 9/14/22 | JH | 0.20 | $195 | $39.00 | Check status; Review Case Management Order; **Update docket and calendar relevant events.** |
| 9/26/22 | JH | 0.50 | $195 | $97.50 | Finalize and file Request to Enter Default (Edwin Escobar); Escobar); Serve via U.S. Mail; **Update docket and calendar relevant events.** |
| 10/4/22 | SVT | 0.20 | $435 | $87.00 | Review Entry Default Judgment re Escobar and Notice $435.00 of Default Judgment Procedure; Correspondence to John re deadlines; **Update docket and calendar relevant events.** |
| 10/14/22 | EM | 0.50 | $195 | $97.50 | Finalize and file POS on Notice of Default Judgment Procedures; **File update - Court docket ECF No. 23 (POS re Ntc of Default Judgment Procedures) Update docket and calendar relevant events.** |
| 1/6/23 | EM | 0.50 | $195 | $97.50 | File update – Court docket ECF No(s). 29 (Motion for Default Judgement); **Update docket and calendar relevant events**; Serve Defendants Motion for Default Judgment by mail and personal |

When clerical tasks and interspersed with non-clerical tasks, courts in the Northern District of
California often "deduct 0.1 per clerical task interspersed in entries with non-clerical tasks."

17

1  *Hernandez*, 2020 WL 1171121, at *7; *see also Crandall v. Starbucks Corp.*, 2016 WL 2996935, at
2  *4 (N.D. Cal. May 25, 2016) (deducting 0.1 per clerical task for entries interspersed with non-
3  clerical tasks). There are 2.6 total hours that include clerical tasks, 0.9 billed at $435/hour and 1.7
4  billed at $195/hour. As Magistrate Judge Hixson explained, that would represent a 0.09 hour and
5  0.17 hour reduction at those rates, respectively, leading to a total attorney's fees reduction of
6  $72.30 ($435 x 0.09 + $195 x 0.17).

        c.      Lodestar Calculation

Factoring in above noted reduction in attorney's fees, the Court awards attorney's fees of $19,671.20 (the requested amount of $19,743.50 less $72.30). *See* Appendix Table 1 (breakdown of fee request by employee).

    5.    Costs

Section 505 of Title 17 of U.S. Code allows a district court to "allow the recovery of full costs by or against any party." 17 U.S.C. § 505. "Congress has specified six categories of litigation expenses that qualify as 'costs'" in 28 U.S.C. §§ 1821 and 1920, and courts may not award litigation expenses beyond those enumerated in the statutes. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 876 (2019).

CNC seeks costs totaling $635.21, comprised of the $402 filing fee, $180 for the process server to serve the summons and complaint, and $53.21 in mailing fees. *See* Keshishian Decl. ¶ 12, Keshishian Suppl. Decl. ¶ 8. Filing fees are allowable under 28 U.S.C. § 1920. *See* 28 U.S.C. § 1920 (allowing recovery of "[f]ees of the clerk and marshal"); *Cummings v. Dolby Lab'ys, Inc.*, No. 220CV04443ODWPVCX, 2021 WL 1564455 *3 (C.D. Cal. Apr. 20, 2021) (applying *Rimini St.* and finding "that Defendants' request for $400 for filing fees is appropriate").

However, CNC relies on abrogated case law to support their request for service of process and mailing fees. All the cases cited by Plaintiff were decided before the Supreme Court decided *Rimini St.* and narrowed the types of costs that can be recovered in a copyright infringement action. *See, e.g.*, *Kourtis v. Cameron*, 358 F. App'x 863 (9th Cir. 2009); *ExperExchange, Inc. v. Doculex, Inc.*, No. C–08–03875 JCS, 2010 WL 1881484, at *12 (N.D. Cal. May 10, 2010); *Yue v. Storage Tech. Corp.*, No. C07–05850 JW, 2008 WL 4185835, at *6 (N.D. Cal. Sept. 5, 2008);

1  *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d
2  1253, 1258–1259 (9th Cir. 2006). Service of process and mailing costs are not enumerated in
3  either 28 U.S.C. § 1821 or § 1920, and the CNC has been unable to locate any case law awarding
4  those costs after *Rimini St.* Therefore, this Court rejects Magistrate Judge Hixon's
5  recommendation to grant CNC the full $635.21 requested and award only $400 in costs to CNC.

6.  Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *Autodesk, Inc. v. Flores*, 2011 WL 337836, at *10 (N.D. Cal. Jan. 31, 2011) (awarding post-judgment interest in a default judgment proceeding). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, the Court awards any interest that accrues according to the applicable rate pursuant to § 1961(a).

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** CNC's motion for default judgment. It awards CNC actual damages of $870,000; a permanent injunction; an order directing Defendants to destroy any infringing software from their computers; attorney's fees of $19,671.20; costs of $400; and any interest that accrues from the date of the default judgment.

| TABLE 2: SUMMARY OF HOURS EXPENDED PER EMPLOYEE | | | | |
|---|---|---|---|---|
| **Employee** | **Title** | **Hours** | **Rate** | **Dollars** |
| John McInnes | Copyright Enforcement Counsel | 15.7 | $575 | $9,027.50 |
| Milford Keshishian | Litigation Counsel | 0.6 | $575 | $345.00 |
| Stephanie Trice | Litigation Counsel | 16.3 | $425 | $7,090.50 |
| Evan Chavez | Litigation Counsel | 1.9 | $300 | $570.00 |
| Allison Olivia | Legal Assistant | 5.9 | $195 | $1,150.50 |
| Jenna Han | Law Clerk | 2.0 | $195 | $390.00 |

19

| Emily Mifflin | Paralegal | 8.7 | $195 | $1,696.50 |
| --- | --- | --- | --- | --- |
| **Excluded Clerical Tasks** | | **(2.7)** | **$195** | **($526.50)** |
| **Total** | | | | **$19,743.50** |

This order disposes of Docket Nos. 29 and 33.

**IT IS SO ORDERED**.

Dated: May 12, 2023

_____
EDWARD M. CHEN
United States District Judge